No. 24-1638

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**MEGAN HEDGEPETH**

*Plaintiff-Appellant*

v.

**NASH COUNTY; NATALIE WEBB,** in her official
and individual capacities; and
**MARY REEVES,** in her official and individual
capacities,

*Defendants-Appellees*

---

On Appeal from the United States District
Court for the Eastern District of North
Carolina Eastern Division

---

**PLAINTIFF-APPELLANT'S BRIEF**

---

Sharika M. Robinson
The Law Office of Sharika M. Robinson
10230 Berkeley Place Drive
Suite 220 Charlotte, NC 28262
704-561-6772
Fax: 704-561-6773
Email:
srobinson@sharikamrobinsonlaw.com
*Counsel for Plaintiff-Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH
CIRCUIT DISCLOSURE OF CORPORATE AFFILIATIONS AND
OTHER INTERESTS

In civil, agency, bankruptcy, and mandamus cases, a disclosure
statement must be filed by all parties, with the following
exceptions: (1) the United States is not required to file a
disclosure statement; (2) an indigent party is not required to
file a disclosure statement; and (3) a state or local government
is not required to file a disclosure statement in pro se cases.
(All parties to the action in the district court are considered
parties to a mandamus case.)

In criminal and post-conviction cases, a corporate defendant
must file a disclosure statement.

In criminal cases, the United States must file a disclosure
statement if there was an

organizational victim of the alleged criminal activity. (See
question 7.)

Any corporate amicus curiae must file a disclosure statement.

If counsel is not a registered ECF filer and does not intend to
file documents other than the required disclosure statement,
counsel may file the disclosure statement in paper rather than

electronic form. Counsel has a continuing duty to update this information.

No: 24-1638 Caption: *Hedgepeth v. Nash County, et. al.*

Pursuant to FRAP 26.1 and Local Rule 26.1,

Megan Hedgepeth

(name of party/amicus)

who is, Plaintiff-Appellant, makes the following disclosure:

(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other
     publicly held entity?                                 NO


     If yes, identify all parent corporations, including all
     generations of parent corporations:

2.   Does party/amicus have any parent corporations?    NO

     If yes, identify all parent corporations, including all
     generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a
     publicly held corporation or other publicly held entity?
                                                            NO

     If yes, identify all such owners:

4.    Is there any other publicly held corporation or other
      publicly held entity that has direct financial interest in
      the outcome of the litigation (Local Rule 26.1(b))?  NO

      If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete
      this question)

                                                            NO

      If yes, identify any publicly held member whose stock or
      equity value could be affected substantially by the outcome
      of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there
      is no such member:

6.    Does this case arise out of a bankruptcy          NO
      proceeding?


      If yes, identify any trustee and the members of
      any creditors' committee:


7.    Is this a criminal case in which there was an
      organizational victim?
                                                        NO


      If yes, the United States, absent good cause shown, must list
      (1) each organizational victim of the criminal activity and
      (2) if an organizational victim is a corporation, the parent
      corporation and any publicly held corporation that owns 10%
      or more of the stock of victim, to the extent that
      information can be obtained through due diligence.


Signature: _/s/ Sharika M. Robinson_    Date: _August 21, 2024_

Counsel For: _Megan Hedgepeth_

4

**CERTIFICATE OF SERVICE**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on August 21, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy and their addresses listed below:

Sonny.Haynes@wbdus.com

nikole.crow@wbdus.com

/s/ Sharika M. Robinson                          August 21, 2024

     (signature)                                      (date)

**TABLE OF CONTENTS**

Table of Authorities ........................................ii

Introduction ............................................... 1

Jurisdictional Statement ................................... 3

Statement of the Issues .................................... 3

Statement of the Case ...................................... 4

    A.   Factual Background ................................... 7

    B.   Procedural History and Relevant Rulings .............. 15

Summary of Argument ........................................ 21

Standard of Review ......................................... 22

Argument ................................................... 22

    I.   Defendants-Appellees misrepresented and/or omitted
       material facts that caused Appellant to be detained
       and prosecuted. ................................. 22

    II.  The district court erroneously concluded that
       Appellant did not have a property interest that
       warranted an impartial hearing . . . . . . . . . 30

    III. The district court applied the incorrect standard of
       review . . . . . . . . . . . . . . . . . . . . .34

Conclusion ................................................. 38

**TABLE OF AUTHORITIES**

**Cases**

*Duke v. Uniroyal Inc.*,
    928 F.2d 1413 (4th Cir. 1991) ........................... 34

*Glynn v. EDO Corp.*,
   710 F.3d 209 (4th Cir. 2013) ............................ 22

*Goldberg v. Kelly*,
   397 U.S. 254 (1970) ..................................... 33

*Harlow v. Fitzgerald*,
   457 U.S. 800, 818 (1982) ................................ 29

6

*Harris v. Town of S. Pines*,

 2024 U.S. App. LEXIS 19485, (August 5, 2024) ..............29

*Holman v. Block,*

 823 F.2d 56 (4th Cir. 1987) ...............................33

*Humbert v. Mayor & City Council of Baltimore City*,

 *866 F.3d 546, 555 (4th Cir. 2017).* ........................4,23

 *Jacobs v. N.C. Admin. Office of the Courts*,

 780 F.3d 562 (4th Cir. 2015) ...............................34

*Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.*,

 327 N.C. 283, (1990) .......................................35

*Massey v. Ojaniit*,

 759 F.3d 343, 357 (4th Cir. 2014) ..........................30

*McLean v. Patten Cmtys., Inc.*,

 332 F.3d 714 (4th Cir. 2003). ..............................22

*Miller v. Prince George's Cnty.*,

 475 F.3d 621, 631 (4th Cir. 2007) ..................4,23,24,30

*Monell v. Dep't of Soc. Servs.*,

 436 U.S. 658 (1978) .....................................10,35

*Pearson v. Callahan*,

 555 U.S. 223 (2009) .......................................29

*R.A. v. Johnson*,

 36 F.4th 537 (4th Cir 2022). ..............................36

*Westmoreland v. TWC Admin. LLC*,

 924 F.3d 718 (4th Cir. 2019) ..............................34

**Statutes**

28 U.S.C. § 1291...........................................2

28 U.S.C. § 1331...........................................2

U.S. Const. Amend. XI,XIV..................................
12, 45

7

Federal and Local Rules

Fed. R.Civ. P. 56 ....... 2, 7, 9, 10, 11, 13, 22, 23, 25, 28, 29

**Other authorities**

U.S. Court of Appeals for the Fourth Circuit: Appellate Procedure
Guide

https://www.ca4.uscourts.gov/appellateprocedureguide/Initial_Re
quirements/APG-appearancedisclosuredocketing.html (February,
2021) ................................................... 22

U.S. Court of Appeals for the Fourth Circuit: Docketing
Statement—Civil/Agency Cases.

https://www.ca4.uscourts.gov/docs/pdfs/dockstatementcivagy.pdf?
sfvrsn=a84490d0_2 ........................................ 2

**INTRODUCTION**

Megan Hedgepeth ("Plaintiff", "Plaintiff-Appellant", "Appellant" or "Ms. Hedgepeth") is a single mom of three (3) children, one of whom has Downs Syndrome. She utilized the Food Stamp Program to aide with the nourishment of her young children while she cared for her youngest, disabled child. Nash County (the "County"), Natalie Webb ("Ms. Webb") and Mary Reeves ("Ms. Reeves") (collectively "Defendants", "Defendants-Appellees" or "Appellees"), wrongfully targeted and deliberately caused the illegal detention and prosecution of Ms. Hedgepeth for felony-food-stamp fraud for no better reason than because they "could".

Ms. Hedgepeth comes from a working-class family located in Eastern North Carolina that is known for its connectedness to one another and community advocacy. Based on an anonymous report, Defendants identified Ms. Hedgepeth as a recipient who needed to verify if her children's father, Mr. Tawaildo Brown ("Mr. Brown"), lived in her parent's home with her at recertification. Ms. Hedgepeth responded and completed the form Defendants provided and submitted proofs that Mr. Brown did not reside in the home with her.

Defendants--after recertification--again received a report that Mr. Brown resided with Ms. Hedgepeth in her parents' home. Defendants required Ms. Hedgepeth to provide documentation to establish who resided with her in her parent's home, while

1

simultaneously reducing her benefits based on their account for Mr. Brown's residency in her parent's home. Ms. Hedgepeth provided the requested proofs and requested a hearing to challenge the reduction of her food stamp benefits.

In a note made by Defendants, even before Ms. Hedgepeth's benefits were reduced, they stated that they would reduce Ms. Hedgepeth's benefits to account for Mr. Brown residing with Ms. Hedgepeth. JA035, JA399. The reduction would coincide with a 10-day notice and request for a hearing. *Id*. After the hearing is held and decision rendered, warrants would be issued for Ms. Hedgepeth's arrest.

The State Hearing Officer, however, found that Mr. Brown did not reside with Ms. Hedgepeth, Ms. Hedgepeth provided adequate proofs of address and Defendants did not establish that Mr. Brown resided with Ms. Hedgepeth. Defendants appealed the decision, which was affirmed.

A day after the State Hearing Officer issued its decision to affirm, Defendants caused a warrant to be issued by a magistrate for Ms. Hedgepeth's arrest for food stamp fraud based on Mr. Brown's residency in Ms. Hedgepeth's home. Ms. Hedgepeth was arrested at her home in front of her children and jailed and prosecuted.

Defendants failed to disclose to the magistrate that two State Hearing Officers reviewed all information provided by Defendants and concluded that Mr. Brown did not reside in Ms.

2

Hedgpeth's home and reinstated benefits and affirmed the decision to reinstate benefits in their warrant application and do not contest this fact.

After prosecution was initiated, the Assistant District Attorney viewed the files provided by Defendants and learned of the State Hearing Officers decisions and review and dismissed the charges against Ms. Hedgepeth (in the interest of justice), saying they would be an "impediment" to prosecution.

Had Defendants provided complete and accurate information to the magistrate, Ms. Hedgepeth could have avoided improper prosecution.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action under 28 U.S.C. § 1331. The court entered an order on June 14, 2024, granting Defendants' Motion for Summary Judgment (the "Motion") and  the court entered final judgment in favor of the Appellees. Ms. Hedgepeth filed his timely notice of appeal on July 9, 2024. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.**Misleading and/or Omission of Fact**: Did the district court err in granting summary judgment to Defendants where the record shows that they misrepresented and/or omitted material facts in connection with initiating felony charges against Ms. Hedgepeth?

3

**2.Reduction in Benefits**: Did the district court err in deciding that due process had been satisfied when a representative premeditated the taking of a benefit before the hearing to set off a set of circumstances that would result in prosecution?

**3.Improper Standard of Review**: Did the district court err in making inaccurate factual determinations, raising evidentiary issues and ignoring the record and requiring certain proofs?

### STATEMENT OF THE CASE

This case concerns the improper application of *Miller v. Prince George's Cnty.*, 475 F.3d 621, 631 (4th Cir. 2007) and *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 556 (4th Cir. 2017), its progeny and the cases it relied upon to define the confines of a detention and prosecution based on material misrepresentations or nondisclosure of material facts. This case also highlights the requirements and proofs that must be submitted to a jury as opposed to being decided by a district court. Specifically at issue is what constitutes "reckless disregard" when misleading and/or false statements are used to procure a persons' detainment, arrest and prosecution. Appellees initiated felony charges of fraud against Appellant after two state "judges" determined that Appellant had -- in essence -- committed no fraud.

There is no dispute that when Appellees submitted a warrant application for Ms. Hedgepeth's arrest, they did not inform the

4

magistrate of the two independent decisions that were previously
made by the State Hearing Officers.  It is further undisputed that
Appellees did not inform the magistrate that there were prior
hearings that were decided in favor of Appellant.  It is also
undisputed that Appellees discovered nor provided the magistrate
and the prosecutor no more information than that of which the two
State Hearing Officers found were inadequate to support a
reduction in benefits based on those who resided in Appellant's
home. In error, the district court (not a jury) decided that there
was no reckless disregard because Appellees had a "reasonable"
belief that their "evidence" could support criminal food stamp
fraud even though it had already been found to not even support an
investigation of fraud before the agency.

On a play of words, Appellees' main contention is that the
agency investigation that they initiated against Appellant was not
mutually exclusive.  Appellees say that the agency investigation
that they initiated against Appellant was based solely on if Mr.
Brown resided in her home.  Appellees say the criminal
investigation that they initiated against Appellant was based on
fraud—which could only be substantiated if Mr. Brown resided in
her home.  Although the two investigations are one in the same,
they were not required to disclose the facts and outcomes of the
agency investigations when initiating Appellant's arrest nor were
they required to disclose the outcomes at prosecution.

5

The Assistant District Attorney, however, reviewed the same evidence submitted to the State Hearing Officers (in addition to the hearing audio) and determined that there was insufficient evidence to support a crime.  As such, there was more than enough evidence to support a question to be posed to a jury of why Appellees failed to disclose the agency hearings and their outcomes.

Rather than submit questions to the jury, the district court itself decided (on Appellees' motion for summary judgment) that despite the material omissions, no constitutional violation had been committed because Appellant failed to prove that Appellees deliberately omitted information. In doing so, the district court jumped into the mind of Appellees and determined that their reasoning for believing the two types of hearings, based on the same evidence, parties and claims, were distinct because one hearing determined if Mr. Brown lived in the home and thus required a *reduction in benefits* and the other was to determine if Mr. Brown lived in the home and thus supported *criminal prosecution*. The district court failed to reconcile that both hearings, despite the outcome, focused on the same-central question: Was there evidence to support that Mr. Brown resided in the home with Appellant? In the alternative, the district court reasoned that it could not determine reckless disregard based on nondisclosure of facts because Appellant did not produce the warrant application for its review.  Appellant requested the

6

warrant application from Appellees; they did not produce it. Dkt. 36, Exhibit 3.  Appellant filed a motion to compel; no additional documents were produced. *Id*. Also, a warrant application, *e.g.*, what was disclosed is not pertinent as there was no dispute that Appellees failed to disclose either of the agency's hearings.

## RELEVANT FACTUAL BACKGROUND

On April 18, 2018, Appellees initiated a "Suspected Fraud Referral" investigation to determine the number of members in Appellant's household and household income to quantify appropriate food stamp allowance. JA 444.  The address of relevance is 8185 Medoc Mountain Road, Hollister, North Carolina 27844. JA 512. On May 9, 2018, Appellees informed Appellant that an anonymous caller reported that the father of her children resided in her home but had not been accounted for on her request for benefits application. JA 397. The notice asked Appellant to provide two independent documents to verify and identify persons in her household. *Id*. On May 18, 2028, Appellant provided Appellees with a copy of her lease (the "Lease"). *Id*. The Lease establishes that Mr. Brown did not reside in Appellant's household. JA 415. On May 28, 2018, Appellant provided Appellees a notarized statement from her father that identified that Appellant and her three children resided in his home. JA 301. On May 31, 2018, Appellee Webb spoke with Appellant's father who explained to Appellee Webb that Appellant resided in a home with her three (3) children and Mr. Brown did not reside in the home with Appellant. JA 397.

7

Afterwards, in June, Appellees recertified Appellant's benefits. *Id*. Appellee Webb closed the fraud investigation on June 4, 2018. JA 34.

On June 5, 2018, after recertification and closure of the fraud investigation, Appellees received another report that Mr. Brown resided in Appellant's home. JA 397, JA 304.

On July 5, 2018, Appellee Webb spoke to Appellant's case worker to request that she hold Appellant's recertification. JA 398. On July 6, 2018, Appellee Webb reopened an investigation under Program Integrity. *Id*. On July 6, 2018, Appellee Webb conducted a DMV and post office check. JA 304. Although Appellee Webb did not exactly match an address of Mr. Brown's to Appellant's, she concluded there was sufficient evidence to reopen the fraud investigation based on a conversation with the latest reporting witness. JA 398.

On the same date, July 6, 2018, Mr. Brown provided Appellees with a statement that indicated his address. JA 305. On July 6, 2018, Appellee Webb requested that Appellant's landlord complete a "Landlord Verification Letter" DSS 8205 Form to determine if Mr. Brown resided with Appellant.  JA 303.  On July 11, 2018, Appellant's landlord completed the form, listing the individuals who resided in Appellant's home and stated "Do not or ever seen Tawaido Lamont Brown at this house. The only people seen at home are her and her children." *Id*., JA 513.  On July 9, 2018,

8

Appellees had a conversation with Mr. Brown. Mr. Brown informed Appellees that he did not want to be added to a case that he had nothing to do with, he was entitled to visit his children without being added to a food stamp case, and that he resided in Greenville, not with Appellant. JA 306.

Appellees added Mr. Brown to Appellant's food stamp benefits. Because Mr. Brown was a convicted felon, only his income was included not his presence as a qualifying person for assistance. JA 306, JA 398.

On July 10, 2018, Appellees reduced Appellant's benefits by $94 from $458 to $364. JA 200, JA 398, JA 410.

On July 23, 2018, in response to the reduction, Appellant requested a hearing. JA 446. July 26, 2018, Appellees processed Appellant's appeal, indicating "The client disagrees with the decision to add children's father to case." JA 452. The appeal further stated:

> Due to collaterals received by the agency, caseworker was advised that children's father will need to be added to the case. Client does not agree with the decision made to add children's father and income to FNS case. Client stated that the children's father doesn't live there but it's been verified that he does. Client's benefits dropped due to adding income but not the father because he's a drug felon and he refuses to comply . . . .

*Id.*

Appellant continued to provide proof of the members of her household. On August 7, 2018, Ms. Hedgepeth followed with a copy

9

of her Mr. Brown's car insurance, which unequivocally established that he did not reside with Ms. Hedgepeth. JA 399, JA 308. Appellant also submitted a copy of her school aged children's school records. *Id.*

The next day, August 8, 2018, Appellee Webb noted and decided that the case "will go to Criminal Court." JA 399. In particular, Appellee Webb indicated:

> It is decided that the case will go to Criminal Court. The Client's last 10 day letter will run out 8/28/18 once it is mailed out on 8/14/18. This will coincide with her request to have a State Hearing regarding the addition of Mr. Brown to her household. Warrants will be issued once the hearing is held and a decision is rendered.

*Id.*

As indicated in her August 8, 2018 Notes, on August 14, 2018, Appellee Webb mailed Appellant a letter ("August 14, Letter"). JA 399. The August 14 Letter indicated that County DSS had completed its investigation and confirmed that Appellant had received benefits due to fraud. Appellee Web informed Appellant that she had until August 28, 2018, to respond. *Id.* Appellant continued to contest Appellee Webb's allegations by appeal.

The NC DHHS heard the matter on August 30, 2018. JA 400. The State Hearing Officer Scott E. Gingery found that: 1) Appellant was recertified in June 2018; 2) "The County used information from th[e] investigation to determine Mr. Brown, the father of the Appellant's children lived with her", and 3) The Appellant disagreed. County DSS "did not present any information . . . that

10

[Ms. Hedgepeth's children's father] lived in the house . . . ." On September 5, 2018, NC DHHS issued a decision that required full benefits be reinstated. JA 200.

September 12, 2018, Defendants were granted an extension to further explain that they were trying to establish that Mr. Brown resided with Appellant in Hollister.

On September 21, 2018, Appellee Reeves appealed. JA 449. The reason for the appeal stated "we received information that Tawaildo Brown was living at Medoc Mountain Road. Megan Hedgepeth failed to provide proof that Tawaildo Brown wasn't living in the home at Medoc Mountain Road." *Id*.

The appeal also provided that "FNS was waiting for clarification from Program Integrity at the state level to see what documentation and verification could be provided to the Hearing Officer due to open on-going investigation. We never heard back from Program Integrity on what could and couldn't be provided . . . ." *Id*.

On September 27, 2018, NC DHHS State Hearing Officer Linda Eckert issued a Final Decision that categorically said that "County DSS presented no evidence to support their finding that . . . [Ms. Hedgepeth's children's father] resided at the same address . . . ." NC DHHS identified the many pieces of evidence that established separate residences that Ms. Webb chose to ignore. It ordered reinstatement of full benefits. The letter also

11

directed that petition for judicial review was the proper recourse.

Appellees notes say "[t]his time the hearings officer is aware that we were saying that both Ms. H and Mr. Brown live at Medoc Mountain. We said she failed to prove that he was NOT living at the home in Medoc Mountain." JA 401.  Based on the " prior record and our argument" the "officer point[ed] out that none of the information presented at the original hearing shows the same address for Ms. H[edgepath] and Mr. Brown." *Id*.

Appellees went on to further state that they knew and understood that there was no evidentiary proof that Mr. Brown resided with Appellant nor used the same address as she:

> Mailing address for Ms. H- 8185 Medoc with physical address of 8163 Medoc. Vehicle Query show 8185 Medoc. Rental Agreement shows 8163 Medoc with Ms. H as the only tenant.
>
> The addresses we provided for Mr. Brown were 8201 Medoc. His DL showed 8201 Medoc. (This does not match any of Ms. H's Medoc addresses.)
>
> Ms. H provided an SECU letter addressed to him postmarked on July 6 saying he lives at Debsan Circle in Greenville.
>
> *We didn't present anything showing the same address for both of them*.

*Id*. (emphasis added).

On October 3, 2018, County Appellee reinstated Appellant's full benefits. JA 401. October 4, 2018, one day later, Appellee Webb swore out a warrant for Appellant's arrest based on the fact that Appellant received food stamp benefits while Mr. Brown

12

resided with her but did not include his information. JA 401. A
statement that Ms. Webb knew: 1) had been litigated, and 2)
determined to be false by two credible, neutral decision-makers.
Appellee Webb was adamant that she did not provide any information
about the agency's hearing to the magistrate:

> Q. Okay.· So you typed the warrant up?
>
> A. I did.
>
> ***
>
> Q. Did you let the warrant -- I mean the magistrate know that
> there were two hearings which determined that there was no
> food stamp fraud?
>
> A. No. That had nothing to do with the program integrity
> investigation. The food stamp hearing and program integrity
> are two different things.
>
> Q. So why didn't you feel that the magistrate should know
> that there were two hearings?
>
> A. Because it had nothing to do with the program integrity
> investigation.

JA 348.

Appellee Webb further testified that the warrant application
was typed up by her, signed off by several people: "Also, before a
case was carried to court, not only did we issue a warrant, Paula
Person signed off on it. The program supervisor signed off on it.
And staff attorney Jayne Norwood signed off on it." JA 334.
Appellee Webb stated, "Again, the file was sent to Mary Reeves,
Paula Person and Jayne Norwood for them to review and sign off on
before a warrant was typed up and issued at the magistrate's

13

office." JA 349.  All people who reviewed this file did not apprise the magistrate of either hearing.

Ms. Hedgepeth was arrested at her home, in front of her children, taken to jail and criminally processed based on a fact that she has twice proven to be untrue.

Pursuant to a discovery request, on October 22 or 30, 2018, Ms. Webb produced the same 583 pages of "proof" of fraud as submitted in the administrative hearing, entitled Superior Court Summary (the "Summary"). JA 349, JA 401. The Summary rehashes the same issue of if Appellant was overpaid benefits based on the belief that Mr. Brown was part of her household, identical to the eligibility agency hearings:

> Megan Hedgepeth has been receiving Food and Nutrition Services
> benefits for herself and three children and has failed to
> report that the father of the two youngest children, Tawaildo
> Lamont Brown, has been residing in the home. In lieu if
> wages, Mr. Brown receives Social Securi ty' Supplement Income
> in the amount ofS755 a month that is countable income. By
> including Mr. Brown and his income in the budget unit, Ms.
> Hedgepeth's benefits decreased by S94 a month. As a result of
> Ms. Hedgepeth's failure to include Mr. Brown, she has
> received 55,574.00 in ineligible Food and Nutrition Services
> benefits from February 1,2013 - July 31, 2018.

JA 410.

Prosecutor Bill Wolfe dismissed the charge of "Food Stamp Fraud" against Ms. Hedgepeth on April 5, 2019. He, like two NC DHHS hearing officers, found that "[t]here is insufficient evidence to warrant prosecution" and that the "issue was litigated

14

by the Department of Health and Human Services, . . . and DHHS

found in favor of Defendant. State has concluded that there is

insufficient proof beyond a reasonable doubt that Defendant

committed this offense." JA 518.

Attorney Wolfe also sent Defendants a letter on April 5,

2019, to explain his dismissal:

> Thank you for meeting with me about this case and helping me
> gather information about it. I corresponded with Mr. Anthony
> Stiller at DHHS and he provided me a digital copy of the
> recording of the hearing in Ms. Hedgepeth's case, and I
> listened to it. From the recording it does appear, as you and
> other members of DHHS staff have told me that nothing was
> said during the hearing about the verification of address
> letter from GEICO Ms. Hedgepeth had provided possibly being
> fraudulent. With that said, as you and I have discussed, the
> fact that DHHS ruled in favor of Ms. Hedgepeth would still be
> an impediment to the State in a criminal trial.
>
> I have corresponded with Ms. Hedgepeth's attorney for the
> criminal case in an effort to try and resolve it with some
> type of lesser included plea. and those conversations were
> not fruitful.
>
> According to her attorney, Ms. Hedgepeth would contend she
> obtained the letter from GEICO's website rather than from a
> GEICO office, and would be able to reproduce this process in
> front of the jury if she were to be tried.
>
> I have concluded that the State would not prevail in a jury
> trial in this case and I am therefore dismissing the charge.

JA 454.

## PROCEDURAL HISTORY AND RELEVANT RULINGS

Appellant filed her Complaint against Appellees on October 1,

2021.  Appellant asserted claims under 42 U.S.C. §§ 1981 and 1983,

for sex and race discrimination, in connection with Appellees

15

improper procurement of her arrest for felony food stamp fraud. Appellant also asserted claims violations of her Fifth and Fourteenth Amendment due process protections based on Appellees reduction of her food stamp benefits absent adequate notice and opportunity to be heard.  Appellant also asserted corresponding state law claims for malicious prosecution, abuse of process, and infliction of emotional distress.

Appellees defaulted and did not answer but the Court reinstated their defense. The parties engaged in discovery disputes.  Appellees were ordered to update responses and produce additional documents. For the most part, Appellees maintained that there was no additional documents to be produced.

There was a long delay and pause in the litigation. Appellant sought calendar of the cased for trial, which instead prompted a new scheduling order.

Appellees filed the Motion for Summary Judgment. In the Motion, Appellees maintained claims against Appellee County should be dismissed under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) because no policy had been identified.  Appellees maintained that no illegal seizure claim could be made against them because they were not the arresting entity. Appellees contended that claims for race and sex discrimination should be dismissed absent direct evidence of discrimination. Appellees maintained that Appellant's Due Process violations failed because

16

Appellant was afforded a hearing and opportunity to be heard. In
the alternative, Appellees contended that Individual Appellees
were entitled to qualified immunity because their actions were
investigative and not prosecutorial.

Turning to the state law claims, Appellees sought dismissal
on the ground of governmental immunity, and Appellant's
allegations did not suffice to establish waiver of such immunity.
Appellees then contended that probable cause existed to support
Appellant's arrest and prosecution and thus was not actionable.
Appellees sought dismissal of Appellant's abuse of process claim,
noting, there was no "act" in which they attempted to use the
criminal proceeding to gain advantage over Appellant. In terms of
infliction of emotional distress, intentional or negligent,
Appellees sought dismissal because Appellant did not have a
medical diagnosis. Finally, Individual Defendants said that all of
Appellant's state-law claims should be dismissed against them
because there was no proof that they acted maliciously in their
treatment of Appellant.

Appellant responded and identified at least four (4) customs
and practices that could be used to impose *Monell* liability on the
County, all rooted in its mistreatment and/or prosecution of
benefit recipients.  In terms of violations for their wrongful
detention and prosecution, Appellant explained that a person who
provides false and/or misleading information with a reckless

17

disregard that procures someone's detainment can be held liable for the Fourth Amendment violation under *Miller v. Prince George's Cnty.*, 475 F.3d 621, 631 (4th Cir. 2007) and its progeny. Appellant further maintained that the stereotypical and demeaning nature in which Appellees treated her supported her claim of race and/or gender discrimination under Section 1981. Appellant then countered that her Due Process violations should not be dismissed because she was not put through an impartial process or tribunal. Appellees were to reject all documentation and initiate criminal proceedings as indicated in the notes before the process began. Appellant asked the district court to reject any notion that Appellees were entitled to qualified immunity because there was evidence to support the malicious nature of their actions.

In terms of her state law claims, Appellant contended that Appellee County was not entitled to governmental immunity because it purchased insurance. Appellant rebutted and said Appellees were liable for malicious prosecution because they initiated the proceeding absent probable cause that resulted in her arrest and prosecution. Appellant also explained that Appellees abused and used the legal system to put her in her place and deter her and others who might challenge their authority. With respect to Appellant's infliction of emotional distress claims, intentionally or negligently, there is no requirement under North Carolina law that a person be diagnosed with an ongoing disorder. Appellant

18

explained that public official immunity could not shield Appellees here because there was evidence that supported malice.

Appellees replied.  Appellees primarily indicated and tried to distinguish between the agency hearing and the prosecutorial process, saying the civil hearing related to "eligibility" of benefits while not stating a distinction between the two processes. Appellees also continued to maintain that Appellee County was entitled to immunity as it related to Appellant's state law claims.

On June 14, 2024, the district court issued its ruling. Relative to the claims, the district court first addressed Appellant's federal claims based on arrest and prosecution.  The district court did not determine if Appellees even met their burden of proof to shift to Appellant.  The district court stated, "plaintiff fails to demonstrate a genuine issue of fact that defendant Webb deliberately made material false statements . . . ." JA 538.  The district court said that because Appellee Webb testified that the two agency hearings had nothing to do with fraud, there could be no issue to submit to the jury. The district court reasoned that Appellee Webb's understanding was consistent with the records because the hearing officers did not determine if the documents were fraudulent. The district court said that because Appellant did not point to evidence that Appellee Webb understood the hearings to cover different matters, a claim based

19

on omissions nor misrepresentations could be made. In the alternative, the district court ruled that because Appellant did not produce the warrant application—an application that Appellee failed to produce even after being ordered to do so. JA 539.

The district court dismissed Appellant's Due Process claims. The district court said that because this was a food stamp recertification process, and the right to food stamps terminate at the end of the certification period, all an applicant can do is request a hearing. It stated that a short delay in the processing of Appellant's food stamps was not actionable.  The district court further insinuated that Appellant caused the delay.  The district court did not address the composition or impartiality of the hearing process or document process.  Nor did the district court address how a reduction in benefits could be a Due Process violation.

 The district court further concluded that because Appellees were performing their job functions there was no inference and could be no inference of race or sex discrimination.

The district court, likewise, dismissed Appellant's *Monell* claim based on lack of proofs. The district court dismissed and weighed Appellees' deposition testimony that it prosecuted benefit recipients often and accepted their affidavit drafted after that said it did not prosecute benefit recipients.

20

Turning to the state law claims of malicious prosecution and abuse of process, the district court dismissed Appellant's claims, saying there was probable cause for Appellant's arrest for food stamp fraud. The district court dismissed Appellant's infliction of emotional distress claims, both the intentional and negligent claim on the basis that Appellant nor her children required medical treatment and failed to show extreme and outrageous conduct on behalf of Appellees. In the alternative, the district court said that Individual Appellees were shielded because they did not act with malice and County Appellee was shielded because its liability insurance preserves its "sovereign immunity and/or governmental immunity". JA 546.

Appellant filed an appeal on July 9, 2024.

### SUMMARY OF ARGUMENT

Appellant contends that his case was improperly dismissed due to a misapplication of the application of material misrepresentations and omissions in the procurement of a persons' arrest and prosecution. Furthermore, it is Appellant's position that a procedure or certification process that is initiated with the end goal to terminate benefits and/or subject a beneficiary of said benefits to criminal prosecution is not fair and impartial and cannot comport with the requirements of Due Process under the Constitution. In addition, the district court erred by failing to apply the correct standard of review and making credibility

21

determinations at the summary judgment stage. Appellant contends that such rulings are error.

STANDARD OF REVIEW

The Fourth Circuit reviews a grant of summary judgment *de novo* to determine if a genuine dispute of material fact exists, drawing all reasonable factual inferences in favor of the nonmoving party. *See Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). Summary judgment should not be granted if "a reasonable jury could return a verdict for the nonmoving party on the evidence presented." *See McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003).

ARGUMENT

Appellant contends that his matter was prematurely dismissed. Each issue is addressed below.

## I. Defendants-Appellees misrepresented and/or omitted material facts that caused Appellant to be detained and prosecuted.

To establish a federal malicious prosecution claim, an arrestee must show that a state actor "(1) caused (2) a seizure of [a plaintiff] pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [her] favor." *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017).

For starters, Appellees position was that it was immune from suit due to the supervening arrest. Appellant opposed their argument and contended that Appellees could be liable for their wrongful withholding of information that led to the arrest and

prosecution of her. In essence, Appellees wrongfully put her arrest and prosecution in motion.

In *Miller v. Prince George's Cnty., MD*, 475 F.3d 621, 629 (4th Cir. 2007), this Court explained that "the Supreme Court has long held that a police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or with reckless disregard for the truth makes material false statements or omits material facts"). In *Miller*, this Court examined an affidavit and arrest warrant that incorrectly named an individual as a suspect in a burglary. The affidavit listed an African American individual, named Miller. The plaintiff there argued that the officer, after his investigation, knew or should have known that the actual suspect was a white male—of the same name—but omitted this information from the affidavit. This Court held that when viewed "in the light most favorable to Plaintiff, a reasonable jury could certainly conclude that the affidavit submitted by [the detective] contained misrepresentations and omissions made deliberately or with reckless disregard for whether they thereby made[ ] the affidavit misleading." And that the detective, when "viewing all the evidence ... must have entertained serious doubts as to ... the accuracy of the information he reported." *Id.*

The lower court ruled that there was no misrepresentation nor omission here because Appellee Webb believed the agency decision to focus on a different inquiry than her fraudulent investigation and ultimate criminal prosecution. The district court relied on

23

Appellee Webb's deposition testimony where she repeatedly stated
that the agency hearing was different from her investigation.
Appellee Webb stated that the agency's hearing was about
eligibility; her hearing was about fraud, but that both hearings
concerned if Mr. Brown resided in Appellant's home.

But the *Miller*, the Court holds differently. *Miller* holds
that omissions are "material", if "an affidavit containing the
omitted material and stripped of all misrepresentations" would not
have provided probable cause to arrest a plaintiff. "Probable
cause to justify an arrest means facts and circumstances within
the officer's knowledge that are sufficient to warrant a prudent
person, or one of reasonable caution, in believing, in the
circumstances shown, that the suspect has committed an offense."
*Humbert*, 866 F.3d at 556. Put differently, "[r]eckless disregard
can be evidenced by an officer acting with a high degree of
awareness of a statement's probable falsity, meaning that when
viewing all the evidence, the affiant must have entertained
serious doubts as to the truth of [her] statements or had obvious
reasons to doubt the accuracy of the information [she]reported."
*Id*.

The evidence here supports that Appellees acted with a high
probability of the distinction between the two processes. First,
Appellee Webb testified that the hearing was all about where Mr.
Brown lived as well as her investigation; she stated she provides
the information for the hearings:

24

Q. Okay. So let's talk about specifically in this case.· Your investigation was -- solely revolved around whether or not Mr. Brown lived in Ms. Hedgepeth's home, correct?

A. That is correct.

Q. The food stamp hearing, the question was whether or not Mr. Brown lived in Ms. Hedgepeth's home, correct?

A. As far as I know, yes.

Q. So how is that a different question?

A. Because I give them information. What they do with it based on their policy, that's what they do. You know, that doesn't have anything to do with whether my investigation is ongoing or not ongoing. They -- I have a policy to adhere to and they have a policy to adhere to.

JA 387.

Furthermore, in Appellee Webb provided her Superior Court Summary (which was the basis of her investigation) and the summary primarily focused on where Mr. Brown lived, if he lived with Appellant, if his income should have been counted, and if there was an overpayment of benefits to Appellant:

> Megan Hedgepth has been receiving Food and Nutrition Services benefits for herself and three children and has failed to report that the father of the two youngest children, Tawaildo Lamont Brown, has been residing in the home. In lieu if wages, Mr. Brown receives Social Security' Supplement Income in the amount of S755 a month that is countable income. By including Mr. Brown and his income in the budget unit, Ms. Hedgepeth's benefits decreased by S94 a month. As a result of Ms. Hedgepeth's failure to include Mr. Brown, she has received 55,574.00 in ineligible Food and Nutrition Services benefits from February 1,2013 - July 31, 2018.

25

JA 410.

Moreover, Appellee Webb testified that all departments check off on a warrant before it is signed and provided to a magistrate. She said that "the file was sent to Mary Reeves, Paula Person and Jayne Norwood for them to review and sign off on before a warrant was typed up and issued at the magistrate's office." JA 349. The prosecution of Appellant did not happen in a vacuum with separate departments, acting separately and distinctively as the district court inferred—in favor of the moving party. The evidence does not support such a conclusion.

To be certain that there were mixed stories, Appellee Reeves testified, that she recused herself at the very inception of the investigation:

> A. I -- I don't know whether it was the lead worker or the worker, when they came in to ask me a question in reference to something about a landlord, and that's when I recused myself from it, because I told them I knew of the landlord, as far as the case itself.· As being the supervisor, certain information would come to me anyway.

JA 236.

Then on the other hand, Appellee Reeves processed the appeal of the remand of Appellant's food stamps, providing that "FNS was waiting for clarification from Program Integrity at the state level to see what documentation and verification could be provided to the Hearing Officer due to open on-going investigation. . . ." JA 449.

26

Notably, the same documentation that was provided to the agency at its hearing was provided to the prosecutor in support of prosecution of Appellant.  The record lists the GEICO statement, proofs of address provided to Appellees by Appellant, DMV records and so forth.

Telling is what was not disclosed first.  No one disclosed to the magistrate that there were two prior hearings.  The outcomes of the two prior hearings were not disclosed.  The hearings were not even initially disclosed to the prosecutor upon request of evidence. Appellee Webb produced 583 pages to the prosecutor as part of her Superior Court Summary.  Not one of the 583 pages included the hearing or the State Hearing Officer's decision –twice made.

Appellees withheld the information because they knew what would happen: no magistrate would have issued a warrant and no prosecutor would have prosecuted felony food stamp fraud charges against Appellant.

Indeed, that is exactly what happened.  Once Appellees' wrongfully withheld information was disclosed, the prosecutor dropped the charges in the interest of justice. Specifically, the Attorney Wolfe sent Appellees a letter on April 5, 2019, to explain his dismissal and said that the agency's ruling in favor of Appellant was an "impediment" to a criminal trial:

27

Thank you for meeting with me about this case and helping me gather information about it. I corresponded with Mr. Anthony Stiller at DHHS and he provided me a digital copy of the recording of the hearing in Ms. Hedgepeth's case, and I listened to it. From the recording it does appear, as you and other members of DHHS staff have told me that nothing was said during the hearing about the verification of address letter from GEICO Ms. Hedgepeth had provided possibly being fraudulent. With that said, as you and I have discussed, the fact that DHHS ruled in favor of Ms. Hedgepeth would still be an impediment to the State in a criminal trial.

                          ***

I have concluded that the State would not prevail in a jury trial in this case and I am therefore dismissing the charge.

JA 454.

The district court concluded that even if there was a misrepresentation, there was a fatal error in this matter being that Appellant did not produce the application warrant.

Notwithstanding that Appellant did request the application affidavit, filed a motion to compel and Appellees still not produce it, such proofs are not fatal nor required.

Here, Appellees do not contend that they did not inform anyone, at either the inception of the arrest or prosecution, that there were two agency hearings in which Appellant was exonerated. Rather, Appellees' position is that they were not required to provide complete information to secure the prosecution of Appellant.

Appellees contended that even the did conduct a constitutional violation they were entitled to qualified immunity and the district court agreed. "The doctrine of qualified immunity

28

protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. at 231 (citation omitted). Qualified immunity is a two-step inquiry. It is not a shield to unreasonable actions taken by public officers.

Recently, in *Harris v. Town of S. Pines*, 2024 U.S. App. LEXIS 19485, (August 5, 2024), this Court held that officers could not mislead prosecutors by withholding exculpatory information until after the suspect was indicted, and as such the officers were not entitled to qualified immunity and the district court erred in granting summary judgment to the officers on the Fourth Amendment malicious prosecution claim. The same is true here and Appellees are, likewise, not entitled to qualified immunity.

This Court has clearly established that omissions or false statements violate the Fourth Amendment if they are both "material, that is, necessary to the finding of probable cause," and "made deliberately or with a reckless disregard for the

29

truth." *Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014)
(internal quotation marks omitted); see also *Miller v. Prince
George's Cnty., MD*, 475 F.3d 621, 629 (4th Cir. 2007).

As explained above, this is the exact argument advanced by
Appellant. Appellees intentionally or recklessly hid material
evidence from decision makers who issued a warrant and initiated
prosecution. When viewed in the light most favorable to Appellant,
a reasonable jury could conclude that a warrant or affidavit
containing the omissions and stripped of all misrepresentations
would not have provided probable cause to arrest Appellant,
nonetheless prosecute her.

These are sufficient facts to submit to a jury to determine
if Appellees are liable. Additionally, for the same reasons stated
above, Appellant's corresponding state law claims of malicious
prosecution and abuse of process should not have been dismissed.

## II.   The district court erroneously concluded that Appellant did not have a property interest that warranted an impartial hearing.

Appellant presented evidence that she was subjected to a
process in which she was continuously required to submit and
produce proofs of members of her home with no impartial evaluation
of the evidence. Appellant contends that due process requires more
that what she was provided.

The Fifth and Fourteenth Amendments requires that "[n]o
person shall ... be deprived of life, liberty, or property,

30

without due process of law." U.S. Const. amend. IV, XIV. Due process requires notice and an opportunity to be heard. Appellant was provided neither in this case.

Notice must be reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and an opportunity to present their objections. *Mullane v. Cent. Hanover Bank & Trust C*o., 339 U.S. 306 (1950). The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. *Id*. at 314. The notice must both convey the written information material to the proceeding and allow a party the opportunity to be heard.

There is very little room to dispute that Appellant had an opportunity to be heard. Appellee Reeves testified that normally an 8650 Form would suffice:

> Q. Okay.· What information would you request?
>
> A. First, the workers usually will call the client and let them know that it's been reported that her spouse is living in the home. And a lot of times the clients would tell, you know, that the client -- their spouse -- they didn't think they had to apply for him because he worked, or whatever the circumstances was.
>
> And if the client was saying no, then they would send them -- they would send them a form. What's the name of the form?· They would do an 8650, request of information, and they would attach a household form, but they didn't have to use the household form verification from someone that knows of their status or living arrangement or verify who lives in the home.

JA 216.

31

Appellee Reeves' testimony continued where she explained that typically, the completion of an 8650 Form would have sufficed.

Here, before the reduction of her benefits, Appellant provided:

1. Her Lease;

2. Notarized Statement from father who she resided with;

3. Landlord Verification;

4. GEICO proof of insurance with Mr. Brown's address;

5. Her children's school records;

6. A form identifying who resided in her home; and

7. A letter from Mr. Brown indicating his residence.

What is most indicative of the lack of due process is Appellee Webb's note, which was created on August 8, 2018, in which she decided that the case "will go to Criminal Court." JA 399. Appellee Webb's note outline all of the necessary steps that would happen, in that Appellant would appeal, the 10-day letter would run, the agency hearing would occur and then she would issue a warrant for Appellant's arrest:

> It is decided that the case will go to Criminal Court. The Client's last 10 day letter will run out 8/28/18 once it is mailed out on 8/14/18. This will coincide with her request to have a State Hearing regarding the addition of Mr. Brown to her household. Warrants will be issued once the hearing is held and a decision is rendered.

*Id.*

32

Meanwhile, Appellees were requesting information, and Appellant provided the information not knowing that there was a plan to initiate criminal proceedings against her and challenge her benefits despite what documentation she provided.

*Goldberg v. Kelly*, 397 U.S. 254, 261, 90 S. Ct. 1011, 1017, 25 L. Ed. 2D 287 (1970) demands more. *Goldberg* provides that there be an adequate hearing before a person's benefits are interrupted, even if those benefits are a governmental benefit. *See id,* ("hold[ing] that due process requires an adequate hearing before termination of welfare benefits, and the fact that there is a later constitutionally fair proceeding does not alter the result").

The district court rejected *Goldberg*. The district court held that *Holman v. Block,* 823 F.2d 56 (4th Cir. 1987) controlled. It said that in the Fourth Circuit, food stamp benefits can be interrupted without an adequate hearing during the certification process if the benefits "time out". *Id.* at 59.

The district court failed to note that Appellant had been recertified in June 2018 as indicated by the hearing officer. JA 198. Appellees reduced her benefits in July 2018. *Id.* Thus, Appellant's benefits were not going to "time out". She was entitled to a pre-termination or pre-reduction evidentiary hearing but was not provided one based on a directive that Appellee Webb made. JA 398.

33

Furthermore, even if Appellant was not entitled to a pre-termination or pre-reduction hearing, she was certainly entitled to more of a hearing than one in which was outcome determinative.

The court also "[m]ust assume that the testimony in favor of plaintiffs was credible, unless totally incredible on its face, and ignore evidence to rebut it." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 722-23 (4th Cir. 2019) (citing *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1419 (4th Cir. 1991)).

Therefore, the court should have determined, or let the jury determine, among other issues, whether Appellant was put through a sham process in which only one outcome was possible.

**III. The district court applied the incorrect standard of review.**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the district court must view the evidence in the light most favorable to the nonmoving party...The court therefore cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (internal citations omitted).

In the case at hand, it is not always clear whether the court has made a credibility determination or simply ignored evidence

34

contrary to its conclusion all together. Nevertheless, the evidence was before the court on summary judgment and should have been considered and taken as true.

As part of Appellant's *Monell* claim, she outlined the fact that Appellees admitted in their depositions to a practice or custom of prosecuting persons who come to them for governmental benefits. Ignoring these facts, the court stated that there was no constitutional violation.

*Monell* provides that "a local government may . . . be sued under § 1983 for an injury inflicted . . . when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694, 98 S.Ct. 2018. (emphasis added).

Along the same vein, the district court dismissed Appellant's state law claim for negligent and/or intentional infliction of emotional. A claim for negligent infliction of emotional distress requires the plaintiff to show that (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) and the conduct did cause the plaintiff severe emotional distress. *Johnson v. Ruark Obstetrics and Gynecology Associates, P.A.*, 327 N.C. 283, 302-303, 395 S.E. 2d 85, 96 (1990).

35

The district court, likewise, broadly offered Individual Appellees immunity.  "Under North Carolina law, public officials' actions are not shielded if they were (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *R.A. v. Johnson*, 36 F.4th 537, 544 (4th Cir 2022).

The district court also gave no weight to Appellant's statement that she was met with disdain and put through a sham investigation that only had one outcome: criminal prosecution. The district court ignore the fact that incomplete information was provided to the magistrate as well as the prosecutor.  The district court did not even consider the fact that discovery showed that Appellees planned to charge Appellant even before her food stamps were reduced.  Also, Appellees vehemently maintained that they did not speak to one another and that one program did not know what the other was doing. Testimony by other parties that this did not occur is not for the court's consideration.

Therefore, for the purposes of Appellees' motion, the Court should have taken the statements that Appellant identified and put them to a jury to decide.

Other pieces of evidence not considered by the court, but which had a material bearing on the case, include Appellee Webb's Superior Court Summary in which she sought to hold Appellant criminally liable for the overpayment of food stamps, when the State agency had already determined that there was no such overpayment.  Other facts that should have been considered were

36

the "FACTS" of the Superior Court Statement.  All facts relate to where Mr. Brown resided. The district court gave no weight to the horror a young and disabled child must feel to see her primary caregiver taken away in handcuffs. The district court ignored the deposition testimony Appellant provided when she described the events and the horror she felt when walking around with two felonies looming over her head.  Even the prosecutor said he tried to get her to take a plea, but she would not. Had she been charged with fraud, Appellant would not have been eligible for services and her children who needed assistance would have received it.

There is no reason that these pieces of evidence, readily available to the court, should have been discounted, yet they were either ignored or dismissed with little to no explanation. As such, the lower court's determinations which did not include these material facts are error.

Furthermore, by failing to draw these reasonable inferences in favor of Appellant, the district court did not merely fail to interpret the facts in the light most favorable to the non-moving party, but in fact made improbable assumptions, based on the evidence, in favor of Appellees. This runs far afoul of the standard that summary judgment should only be granted in the event

that there is no difference of material fact and no reasonable jury could find for the non-moving party.[1]

**CONCLUSION**

The district court's judgment should be reversed.  Appellant requests oral argument.


Respectfully submitted,

/s/ Sharika M. Robinson

The Law Offices of Sharika M. Robinson
10230 Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: (704) 561-6771
Telefax: (704): 561-6673
Email: srobinson@sharikamrobinsonlaw.com
*Attorney for Plaintiff-Appellant*

August 21, 2024


**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief

---

[1]Appellant does not contest that the County is immune from liability of state law claims based on their insurance policy.

38

contains 9901 (less than 13,000) words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in twelve (12) – point, Courier font.


/s/ Sharika M. Robinson

The Law Offices of Sharika M. Robinson 10230
Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: (704) 561-6771
Telefax: (704): 561-6673
Email: srobinson@sharikamrobinsonlaw.com
*Attorney for Plaintiff-Appellant*

August 21, 2024

39

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

/s/ Sharika M. Robinson

The Law Offices of Sharika M. Robinson 10230
Berkeley Place Drive, Suite 220
Charlotte, NC 28262
Telephone: (704) 561-6771
Telefax: (704): 561-6673
Email: srobinson@sharikamrobinsonlaw.com
*Attorney for Plaintiff-Appellant*

40